**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Case No.

GWS CONSULTING, LLC, a Colorado limited liability company.

    Plaintiff,

v.

DOUBLE PORTION HOLDINGS, LLC d/b/a PRICE DRILLING CO.,
a Texas limited liability company.

    Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff, GWS CONSULTING, LLC ("Plaintiff" or "GWS") by and through its undersigned counsel, hereby respectfully submits its Complaint and Jury Demand against Defendant DOUBLE PORTION HOLDINGS, LLC DBA PRICE DRILLING CO. ("Defendant" or "Price") as follows:

PARTIES

1. GWS is a limited liability company organized under the laws of the state of Colorado and having a principal place of business located at 2441 S. Zinnia Way, Lakewood, CO 80228.

2. Price is a limited liability company organized under the laws of the state of Texas and having a principal place of business located at 1032 Main Street, Benavides, TX 78341.

1

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as the parties are citizens of different States and the amount in controversy exceeds $75,000.

4. Venue is properly laid in this court pursuant to 28 U.S.C § 1391(b).

## GENERAL ALLEGATIONS

5. GWS is a business consultant that provides a variety of services for companies looking to raise additional funding or to sell their businesses.

6. Price is a drilling contractor for the oil and gas industry and operates primarily throughout Texas.

7. Price engaged GWS pursuant to an M&A Advisory Agreement dated May 6, 2024, a copy of which is attached hereto as **Exhibit 1** (the "Agreement"), to act as its M&A Advisor in connection with Price's anticipated sale of its business.

8. The Agreement contains an eighteen-month Term spanning from May, 2024 until September, 2025, that will automatically renew in six month increments unless the client, Price, provides at least 30 days' prior notice of its intent not to renew the Agreement. Agreement, § 2.

9. During the Term, GWS must perform certain services for Price, including valuing and marketing its business for sale.

10. Because the client has no obligation to accept an offer after GWS has already performed substantial work to procure one, the Agreement also provides a guarantee that the client will pay GWS a "walk away" fee in the event GWS has obtained a sufficient offer for the client but the client nevertheless elects to suspend or terminate the sale process.

11. In the Agreement, the parties negotiated and ultimately agreed that "[i]f advisor successfully brings forth offers at a minimum of $12,000,000 or more, and Client decides to walk away or suspect the sales process, client agrees to pay Advisor a one-time flat fee of $80,000.00." Agreement § 4.

12. In or about September, 2024, GWS procured for Price, an offer of purchase for its business with an enterprise value of $12,100,000.

13. Price executed with this potential buyer, a Letter of Intent dated September 19, 2024 (the "September 2024 LOI").

14. Ultimately, Price decided not to move forward with the transaction contemplated in the September 2024 LOI, and the Letter of Intent was terminated as of February, 2025.

15. Thereafter, in or about June, 2025, GWS procured for Price, an offer of purchase for its business from a second buyer at an enterprise value of $12,000,000.

16. Price executed a Letter of Intent dated June 4, 2025 with the second buyer (the "June 2025 LOI").

17. During the performance of June 2025 LOI, the oil and gas industry continued to decline.

18. On August 11, 2025, Price sent GWS an email with an attached cover letter stating in relevant part that that it did not want to renew the Agreement after September 2025 and needed "a break from this process."

19. In its August 11 email, Price acknowledged that it was still under the June 2025 LOI and represented that it "will honor those terms."

20. After additional correspondence, GWS sent Price an email on August 15, 2025 confirming its discussions with Price that although the valuation under the June 2025 LOI remained at $12,000,000, Price did not want to move forward with a sale based on some additional changes to the deal structure that the buyer was now requiring.

21. GWS also reconfirmed its discussions that Price did not intend to move forward with its sale process and intended to pull its company off the market.

22. According GWS reminded Price of the "walk away" fee in the Agreement and provided its banking instructions for a wire or ACH payment from Price.

23. Over the next few weeks, GWS continued to encourage Price to renegotiate those aspects of the transaction contemplated in the June 2025 LOI that it did not like, but Price declined to do so.

24. At the same time, Price refused to pay GWS the "walk away" fee and ultimately stopped responding to GWS's communication attempts entirely.

25. On September 15, 2025, after receiving no responses from Price for nearly one month, including with respect to Price's performance under the June 25 LOI, GWS advised that it would notify the potential buyer of Price's decision to terminate the LOI and to pull its business from the market.

26. Price again did not respond.

27. As of the filing of this Complaint, Price has not paid GWS the "walk away" fee despite never disputing that GWS had successfully obtained multiple offers for it for a minimum of $12,000,000.

## FIRST CAUSE OF ACTION
(Breach of Contract)

28. Plaintiff reincorporates the above allegations as if fully set forth herein.

29. The Agreement is a binding contract between the parties.

30. GWS fully performed under the Agreement by, *inter alia*, obtaining for Price, multiple offers of a minimum valuation of $12,000,000.

31. By failing and/or refusing to pay GWS the $80,000 walk away fee despite suspending its sale process, Price has breached the parties' contract.

32. As a direct and proximate result of Price's breach of contract, GWS has been damaged in amounts to be shown at trial.

33. As a direct and proximate result of Price's breach of contract, GWS is entitled to reimbursement of its costs and attorneys' fees expended in connection with this action.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests the following relief against Defendant:

A. An award of all compensatory and consequential damages, fines or penalties of whatever nature awardable under applicable statute, rule, regulation or law, including but not limited to:

   i. All compensatory damages

   ii. All consequential damages

   iii. All actual damages

   iv. All statutory damages

   v. All attorneys' fees and costs permitted.

B. An award of equitable relief;

C. An award of pre and post judgment interest; and

D. An award of any further relief the Court deems just and proper.

JURY DEMAND

**GWS HEREBY DEMANDS A JURY ON ALL ISSUES SO TRIABLE**

DATED this 1st day of October, 2025.

*s/ Lauren E. M. Thompson*
Lauren E. M. Thompson
Courtney C. Weber
Foster Graham Milstein & Calisher, LLP
360 South Garfield Street, 6th Floor
Denver, Colorado 80209
Telephone: 303-333-9810
Email: lthompson@fostergraham.com
Email: cweber@fostergraham.com
*Attorneys for Plaintiff*

6